

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
(973) 645-6340

WILLIAM J. MARTINI
        JUDGE

# <u>LETTER OPINION</u>

August 4, 2010

Steven G. Mintz
Mintz & Gold LLP
470 Park Avenue South
10th Floor North
New York, New York 10016
        (*Attorney for Plaintiff*)

Edward W. Chang
Katharine Virginia Hartman
Thomas S. Biemer
Dilworth Paxson LLP
3200 Mellon Bank Center
1735 Market Street
Philadelphia, Pennsylvania 19103

Michelle M. Sekowski
Boies, Schiller & Flexner LLP
575 Lexington Avenue
7th Floor
New York, New York 10022
        (*Attorneys for Defendant*)


   **RE:   News America Marketing In-Store Services, LLC v. Anidjar, et al.**
        <u>**Civ. No. 09-6070 (WJM)**</u>

Dear Counsel:

Plaintiff News America Marketing-In Store Services, LLC ("NAM") brings the instant action against Defendants Floorgraphics, Inc. ("FGI"), Yves Anidjar, Mike Devlin, Richard Rebh, and George Rebh, alleging fraud and breach of contract.  All Defendants filed motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6).  There was no oral argument.  Fed. R. Civ. P. 78.  For the reasons stated below, Defendants' motion to dismiss is **GRANTED** in part and **DENIED** in part.

## I.    BACKGROUND

Plaintiff NAM and Defendant FGI each provide in-store marketing for sellers of retail products nationwide.  This marketing includes at-shelf coupons, shelf-delivered recipes and rebates, and cart advertisements.  (Compl. ¶¶ 12, 19.)  On March 10, 2009, NAM agreed to purchase FGI's service contracts.  (Compl. ¶ 19.)  Toward that end, the parties signed an Asset Purchase Agreement ("APA") to sell FGI for $13,000,000.  (Compl. ¶ 24.)  In conjunction with the APA, NAM also entered into four individual Goodwill Purchase Agreements ("GPA") with each of the four principal FGI officers: Chief Financial Officer Yves Anidjar; Vice President Mike Devlin; Chief Executive Officer, Chairman of the Board of Directors, and President Richard Rebh; and, Executive Vice President, Secretary, and Treasurer George Rebh.  Compensation for the four Goodwill Purchase Agreements totaled an additional $12,000,000.[1]  (Compl. ¶ 25.)

The sale was completed on a tight schedule, with only two days given to NAM to complete its due diligence.  (Compl. ¶ 29.)  NAM alleges that, soon after closing, NAM discovered that FGI had sold it certain contracts that either: (1) did not exist or (2) by their terms, could not be assigned to a third party. (Compl. ¶¶ 38-39.)  NAM considers the conveyance of both categories of contracts to be void and violative of the warranty provisions of the APA.  (Compl. ¶ 26.)

NAM then sought indemnification from FGI under Section 7.2 of the APA.  NAM requested indemnification for "losses" resulting from FGI's conveyance of these allegedly non-existent and nontransferable contracts.  After FGI rejected the indemnification request, NAM undertook this instant action, bringing claims for breach of contract and fraud against FGI and four of FGI's officers.  In response, Defendants brought this motion to dismiss, pursuant to Rule 12(b)(6).

---

[1] The complaint states multiple times that the total purchase price was $29,500,000 (*See e.g.*, Compl. ¶ 21, 22). The total amount for all four GPAs and the single APA is only $25,000,000.  Neither the complaint nor the briefs explain how the remaining $4,500,000 was to be transferred or whether it was ever paid at all.

## II.    DISCUSSION

A.    Federal Rule of Civil Procedure 12(b)(6) Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true,[2] the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, *see id.* at 570, such that the court may "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' ... it asks for more than a sheer possibility..." *Iqbal*, 129 S.Ct. at 1949 (2009).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Coll. Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002).

B.    Count One – Breach of Contract (against FGI only)

Count One asserts that FGI breached the warranties set forth in the APA by: (1) not obtaining "the consent of third parties to assign some of the Seller Contracts that it promised to convey to NAM" and (2) conveying Seller Contracts that either did not exist or referenced stores that did not exist. (Compl. ¶ 55.)

Notably, Defendant FGI does not move to dismiss Plaintiff's breach allegations based on the non-existent contracts. (Defs.' Mem. 3 n.2). Instead, FGI moves to dismiss

---

[2] This assumption of truth is inapplicable, however, to legal conclusions couched as factual allegations or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

only the first set of allegations, i.e. that FGI breached its covenants in the APA by assigning contracts to NAM that required third-party consent for transfer.

In its complaint, Plaintiff alleges that certain covenants in the APA – including Sections 4.3 and 4.4 – warrant the transferability of the Seller Contracts.  For example, Section 4.3 states:

> The execution, delivery, and performance by Seller of this Agreement does not ... violate or result in a breach of ... any obligation of Seller under, any Contract (including the Seller Contracts) ...

Further, Section 4.4 states:

> No consent, waiver, authorization, approval ... of or from ... any other Person is required in connection with the execution and delivery of this Agreement and the consummation of the Transactions or the continued validity of any Seller Contract.

The language of Sections 4.3 and 4.4 accommodates Plaintiff's position.  Plaintiff represents that the Seller Contracts were the core assets purchased from FGI.  (Compl. ¶ 20.)  One reasonable reading of Sections 4.3 and 4.4 is that they address the transferability of the Seller Contracts from FGI to NAM.  Section 4.4 is amenable to the reading that FGI did not need to obtain any party's authorization in order to assign the Seller Contracts to NAM.  Section 4.3 can be read to state that FGI's performance under the APA, i.e. the transfer of the Seller Contracts, would not violate FGI's obligations under any of these contracts.  These sections may reasonably be read to warrant the transferability of these so-called "core assets" at issue in the purchase agreement.

In response, Defendant FGI contends that the parties carved out of the APA those Seller Contracts requiring third-party consent, rendering Sections 4.3 and 4.4 inapplicable to these nontransferable contracts.  FGI bases this argument on Section 1.5 of the APA; however, the language of Section 1.5 does not decisively support this reading:

> Notwithstanding anything in this Agreement to the contrary, to the extent that the assignment of any Seller Contract requires the consent of any other party thereto ... this Agreement shall not constitute an agreement to assign any such Seller Contract ... if any such attempted assignment would constitute a default therefore or in any way adversely affect the rights of Purchaser thereunder.

This provision is not as expansive as Defendant FGI portrays it to be.  Section 1.5 does not appear to exempt all Seller Contracts requiring third-party consent from Sections 4.3 and 4.4 of the Purchase Agreement, only those for which assignment would result in "default" or would "in any way adversely affect the rights of Purchaser."

Section 1.5 instead can be read to support NAM's argument that FGI represented the Seller Contracts to be valid and assignable.  After the passage cited above, Section 1.5 goes on to state:

> If consent to the assignment ... is not obtained, or if an attempted assignment thereof would be ineffective or would affect the rights of the Purchaser thereunder, then Seller shall cooperate with Purchaser in any reasonable arrangement designed to provide to Purchaser the benefits under such

4

Purchased Assets, including enforcement for the account of Purchaser of any and all rights of Seller against the other party thereto arising out of the breach of cancellation...

If the assignment of a third-party contract would result in default or otherwise adversely affect the rights of NAM thereunder, Section 1.5 states that the Seller Contract would not be assigned pending best efforts by FGI to secure "the benefits of such Purchased Assets" for NAM. Thus, again, the language of Section 1.5 supports the reading that FGI and NAM intended for these contracts to be transferable, stating that FGI would use "best efforts" to facilitate any problematic assignments.

Defendant FGI cites *Click Corp. of America v. Redco Foods, Inc.* 424 F.Supp.2d 753 (D.N.J. 2006) to buttress its construction of the APA. There, the court dismissed the plaintiff's breach of contract claim where defendant ceased production of goods under a contract. The *Click* court based its dismissal on the plain language of the purchase agreement, which stated that "nothing in this contract shall prohibit the company from discontinuing the distribution and sale of extract." *Id.* at 756. Defendants here argue that, similar to *Click*, the plain language of Section 1.5 clearly states that all Seller Contracts requiring third party consent for assignment are excluded from the APA "[n]otwithstanding anything in this agreement to the contrary." (Defs.' Mem. 18) (citing Purchase Agreement §1.5.) Defendants' comparison to *Click*, however, glosses over the salient language of Section 1.5. "Notwithstanding anything in this agreement to the contrary …" is only one excerpt of the relevant language in the provision. As discussed above, Section 1.5 goes on to state that no "this Agreement shall not constitute an agreement to assign any such Seller Contract ... if any such attempted assignment would constitute a default therefore or in any way adversely affect the rights of Purchaser thereunder." Thus, Plaintiff reasonably argues that the language at issue in the instant purchase agreement does not clearly exclude all unassignable contracts from the scope of the Purchase Agreement, and *Click* does nothing to change that reading.

Since Plaintiff does not allege that assignment of the third-party contracts in question would result in "default"[3] or would otherwise adversely affect Plaintiff's rights under the contracts, the contracts at issue do not appear to be exempted from the APA. Accordingly, Sections 4.3 and 4.4 of the APA apply to these nontransferable contracts. In particular, Section 4.4 states that no other person is required to consent to transfer of the Seller Contracts in order for them to be assigned pursuant to the APA. Given the complaint as it currently stands and the inferences that must be drawn in Plaintiff's favor on a 12(b)(6) motion, Count One states a claim for breach of contract. Accordingly, Defendant FGI's motion to dismiss Count One is denied.

---

[3] The APA does not define the term "default."

C.     Count Two – Fraud (against FGI only)

In Count Two, Plaintiff alleges that FGI "defrauded News America by causing News America to enter into the Purchase Agreement and the Goodwill Purchase Agreements while falsely representing the existence or transferability of the Seller Contracts." (Compl. 60.)  Defendant FGI again argues that Section 1.5 supersedes the warranty provisions and carves the Seller Contracts that could not be assigned out of the APA.  (Defs.' Mem. at 25.)  On this basis, FGI claims that there were no misrepresentations as to transferability, since these contracts were taken out of the APA.  This argument fails again here for the reasons discussed above. Section 1.5 excludes only those Seller Contracts for which an attempted assignment would constitute a default therefore or in any way adversely affect the rights of NAM thereunder.  This provision does not categorically exempt all third-party contracts requiring consent for assignment from the provisions of the APA.

In addition, Defendant FGI argues that Count Two is not pled with particularity under Federal Rule of Civil Procedure 9(b).  Pursuant to Rule 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the "precise misconduct with which [it is] charged." *Lum v. Bank of America,* 361 F.3d 217, 223-224 (3d Cir. 2004). To satisfy this standard, a plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation. *See id.* at 224.  Here, Plaintiff has done so.  Plaintiff alleges that FGI misrepresented the transferability of the Seller Contracts in the APA and that Plaintiff entered into the agreement based on these misrepresentations.  Further, the individual Seller Contracts at issue are identified in the Indemnification Notice referenced in the complaint and included as an exhibit.  Thus, the pleading of this count gives FGI more than sufficient notice of the precise nature of the fraud alleged, as required under Rule 9(b).  Accordingly, Defendant FGI's motion to dismiss Count Two is denied.

D.     Count Three – Fraud (against Defendant Richard Rebh)

In Count Three, NAM brings a fraud count against Richard Rebh – CEO, President, and Chairman of the FGI Board.  Plaintiff alleges that Richard Rebh executed and delivered an Officer's Certificate at the closing, in which he falsely certified that the representations and warranties in the Purchase Agreement were true.  (Compl. ¶ 67.)

The threshold issue in addressing this fraud claim is choice of law.  While the APA's "Governing Law" provision specifies that New York law applies, this provision expressly pertains only to "[t]his Agreement."  (Purchase Agreement § 8.8.)  Where a governing law provision is so delineated, the Third Circuit has viewed it as limited in application to the underlying agreement itself, and not to related fraud or non-contractual claims.  *See Black Box Corp. v. Markham*, 127 F. App'x 22, 25 (3d Cir. 2005).  Since both parties concede in their briefing that there is no actual conflict between New Jersey and New York's law regarding common law fraud, the Court shall apply New Jersey law to the instant fraud claims.  *See* Pl.'s Mem. 30-31; Defs.' Mem. 24 n.9; *see also Lebegern v. Forman*, 471 F.3d 424, 428 (3d Cir. 2006) ("If there is not an actual conflict, the inquiry is over and, because

New Jersey would apply its own law in such a case, a federal court sitting in diversity must do the same.").

Under New Jersey law, corporate officers who participate in fraud or other intentional torts can be held personally liable for the losses occasioned thereby. *Van Dam Egg Co. v. Allendale Farms, Inc.*, 199 N.J. Super. 452, 458, 489 A.2d 1209, 1211 (N.J. App Div. 1985) (stating that "[n]o public policy in favor of commerce shields the corporate representative from liability for the consequences of reasonable reliance on his lie.")  While Rebh contends that a corporate officer cannot be held liable for a corporation's contractual obligations absent a basis for piercing the corporate veil, this argument mischaracterizes the nature of NAM's claim.  The complaint does not seek to hold Richard Rebh liable for FGI's obligations under the APA; instead, Plaintiff alleges that Richard Rebh is liable for his own allegedly fraudulent statements contained in the Officer's Certificate.

Defendant Richard Rebh cites the unpublished opinion of *Home Buyers Warranty v. Roblyn Dev. Corp.*, 2006 WL 2190742 (N.J. Super. Ct. App. Div. Aug. 4, 2006), in support of his argument for dismissal.  The *Home Buyers* Court stated, in part, that "liability will be imposed upon a corporate officer only when that officer purposefully agrees to accept personal responsibility for the corporation's contractual performance." *Id.* at *4.  Defendant Rebh contends that he never accepted personal responsibility for the veracity of the contract's representations, and as such, he may not be held personally liable.  (Def. Mem. at 28.)  Rebh's comparison to *Home Buyers*, however, is unavailing.  *Home Buyers* was a breach of contract case, in which plaintiffs attempted to hold a corporate officer liable for contract damages incurred by the corporation.  Here, by contrast, NAM is not seeking to hold Richard Rebh personally liable for FGI's contractual breach; instead, NAM seeks to hold Rebh liable for his own alleged misrepresentations in the Officer's Certificate.  Since Defendant Rebh asserts no other basis for dismissal beyond this argument based on *Home Buyers*, his motion to dismiss Count Three is denied.

E.    Count Four – Fraud (against Defendants Anidjar, Devlin, Richard Rebh and George Rebh)

In Count Four, NAM brings a fraud claim against Defendant Richard Rebh as well as three other FGI officers – Yves Anidjar, Mike Devlin, and George Rebh ("Individual Defendants"). This fraud claim, unlike the other fraud counts, fails to allege any misrepresentations by these Defendants.  Instead, the complaint merely alleges that they "assisted in the preparation of transactional documents."  (Compl. ¶ 73.)  Absent a more particularized pleading, this allegation cannot be found to satisfy Rule 9(b), since it does not set forth the date, place or time of the fraud or else some other facts which substantiates the charge.  *Lum v. Bank of America*, 261 F.3d 217, 224 (3d Cir. 2004).

NAM argues that the Third Circuit has recognized that "[p]articularly in cases of corporate fraud, plaintiffs cannot be expected to have personal knowledge of the details of corporate internal affairs." *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir.

7

1989). As such, NAM contends that the Circuit has implemented a more flexible Rule 9(b) application for such cases. Here, however, NAM fails to quote the rest of the opinion: "[n]onetheless, even under a non-restrictive application of the rule, [plaintiff's] allegations must be accompanied by a statement of facts upon which the allegations are based." *Id.* Since here, Plaintiffs set forth no facts in support their allegation other than those asserted "upon information and belief," their claim for fraud is dismissed without prejudice pursuant to Rule 9(b).

      F.  <u>Counts Five Through Eight – Breach of Contract (against Defendants Anidjar, Devlin, Richard Rebh and George Rebh)</u>

In Counts Five through Eight, Plaintiff asserts breach of contract claims against the Individual Defendants based on the Goodwill Purchase Agreements signed by each.  NAM alleges that each Individual Defendant breached his GPA because the "corresponding Seller Contracts were not conveyed as promised." (Compl. ¶¶ 80, 85, 90, 95.)  Since NAM contends a portion of the contracts either are unassignable or are in violation of an exclusivity agreement, it argues that the attendant goodwill was not delivered for those contracts.  (Pl. Mem. at 35.)  In response, Defendants argue that simply breaching the APA does not, in turn, mean that the GPA was similarly breached; the two contracts are not inherently linked.  (Def. Mem. at 33.)  This is true, but it is not what Plaintiff set forth in its complaint.  Plaintiff alleges that each of the Individual Defendants breached the separate Goodwill Purchase Agreement he executed with NAM by not conveying the goodwill related to the nontransferable contracts.  Accepting these facts as true, Plaintiff states a claim for breach of contract.

## III.   CONCLUSION

For the foregoing reasons, Defendant's Rule 12(b)(6) motion to dismiss is **GRANTED** as to Count Four and is **DENIED** as to Counts One through Three and Counts Four through Eight.  Count Four is **DISMISSED WITHOUT PREJUDICE**.  An Order accompanies this Letter Opinion.

        /s/ William J. Martini
        **WILLIAM J. MARTINI, U.S.D.J.**